# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Estate of
SADIE M. RIVAS,

Deceased.

EDWARD NICHOLAS RIVAS,

Appellant,

v.

LEONARD EUGENE RIVAS and
JOSEPH RANDY RIVAS as personal
representatives of the Estate of Sadie
M. Rivas, Deceased,

Respondents.

No. 73537-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 1, 2016

TRICKEY, A.C.J. — Edward Nicholas Rivas, a beneficiary of his mother's estate, appeals from several orders dismissing his claims against the personal representatives of the estate and approving the activities of the personal representatives. Because he fails to demonstrate any error in the orders on review before this court, and because he fails to provide sufficient argument and an adequate record for review, we affirm. We also deny the personal representatives' request for attorney fees on appeal.

## FACTS

Sadie M. Rivas died testate on June 23, 2007. Her last will and testament, dated May 31, 2007, named her five sons as beneficiaries. Her five sons are Edward Nicholas Rivas (Nick), Leonard Eugene Rivas, Joseph Randy Rivas, John Ashley Cleere, and Robert Lawrence Baca.

Sadie's will appointed two of her sons—Leonard and Joseph—as co-personal representatives of her estate.[1] On September 24, 2007, the trial court admitted Sadie's will to probate and confirmed Leonard and Joseph (hereinafter the personal representatives) as co-personal representatives.

In June 2008, the personal representatives sold one of the estate's assets—real property located at 3709 South 162nd Street in SeaTac, Washington—to Robert for a purchase price of $131,258.

On January 10, 2011, Nick petitioned to remove the personal representatives and to appoint Robert as successor personal representative. Among other things, Nick alleged that the personal representatives breached their fiduciary duty to him "by refusing to honor [his] right to purchase" one of the estate's other assets, a house located at 3713 South 162nd Street in SeaTac, Washington, and by "soliciting Robert . . . to commit fraud and perjury to reduce [Nick's] inheritance."[2]

On February 11, 2011, a court commissioner denied Nick's motion to remove the personal representatives at that time but "reserve[d] ruling on [Nick's] petition."[3] The court gave the estate 30 days to make the house at 3713 South 162nd Street, SeaTac, Washington (the 3713 house) ready for sale to Nick.

Over the next few months, the parties negotiated the sale of the 3713 house to Nick. On April 27, 2011, a court commissioner approved a purchase and sale agreement and directed the sale of the house to Nick for a purchase price of

---

[1] Due to the similarity in names, we refer to members of the Rivas family by their first names. We mean no disrespect.
[2] Clerk's Papers (CP) at 20, 17.
[3] CP at 61.

$66,080. On May 19, 2011, Nick petitioned to confirm the sale and adjust the purchase price. He sought to adjust the purchase price from $66,080 to $38,550 based on significant damage to the property. A court commissioner granted this motion and entered an order reducing the purchase price to $38,080.

On June 1, 2012, the personal representatives moved to unblock the estate account for an order of partial distribution and granting non-intervention powers. This was noted for a hearing on June 15, 2012.

On June 11, 2012, Nick filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, against the personal representatives. He alleged various acts that "constitute[d] a breach of respondents' duties as personal representatives."[4] Most of the acts were related to the sale of the first house to Robert and the sale of the second house to Nick. Nick requested the following relief: (1) an order requiring the personal representatives to file a final report and a petition for the final distribution of the estate, (2) a judgment against the personal representatives jointly and severally for attorney fees incurred to enforce Nick's rights as a beneficiary, (3) a judgment against the personal representatives jointly and severally for waste and mismanagement of the estate assets, and (4) a judgment against the personal representatives jointly and severally for breach of fiduciary duties. No hearing on the merits of this petition was ever noted.

On June 15, 2012, the court entered an order denying the co-personal representatives' motion and ordering mediation on the TEDRA petition. It also

---

[4] CP at 126.

3

ordered an accounting of the estate. Mediation was held in August 2012, but the parties failed to reach resolution of the matter.

On November 3, 2014, the personal representatives filed a verified petition for an order approving their activities and accounting and dismissing Nick's June 2012 TEDRA petition. Specifically, they requested an order (1) approving the sale of the house to Robert for $131,258, (2) approving all other expenses and costs paid by the estate to date, (3) approving the accounting they submitted, (4) dismissing Nick's June 2012 TEDRA petition and denying Nick's request for attorney fees, (5) ordering that they are entitled to reimburse themselves from the estate for certain expenses, and (6) reserving the issue of their request for attorney fees and costs until the hearing on the distribution of the estate. In response, Nick argued that all of the requested remedies should be denied and that the matters in his TEDRA petition should be set for trial or arbitration.

On November 20, 2014, the case proceeded to a hearing on the personal representatives' petition. After hearing argument, a court commissioner certified the matter for trial.

On December 19, 2014, the personal representatives filed a verified motion for partial dismissal of the TEDRA petition pursuant to CR 12(b)(6) and for attorney fees. They argued that four of Nick's claims were frivolous and not cognizable under the law. These claims included: (1) a claim for damages arising from the allegation that Nick lost his job because he was "so tied up with litigation in this case," (2) a claim for damages from the allegation that the personal representatives treated Nick with "disdain" and "animus," (3) a claim for damages

4

arising from the allegation that the personal representatives did not make early distributions to Nick, and (4) a claim for attorney fees related to prior petitions and motions filed in the probate proceeding.[5] The personal representatives also sought sanctions under CR 11 and attorney fees. Nick opposed this motion.

On January 16, 2015, the court held a hearing on the personal representatives' motion for partial dismissal and for CR 11 sanctions.

On January 22, 2015, the personal representatives responded to Nick's TEDRA petition and counterclaimed for attorney fees.

On February 9, 2015, the court entered written findings of fact, conclusions of law, and an order granting the personal representatives' motion for partial dismissal. The court found that Nick had engaged in litigation that was "designed for an improper purpose" and "unsubstantiated in fact and/or unwarranted in law."[6] The court concluded that the four claims were frivolous, that the pleadings were filed for an improper purpose, and that the personal representatives were entitled to CR 11 sanctions and attorney fees and costs. The court dismissed the four frivolous claims and awarded attorney fees and costs in the amount of $5,361.14.

Trial was scheduled for June 8, 2015. Prior to trial, on May 11, 2015, the trial court entered an order approving the personal representatives' activities and accounting, approving the final report, and approving distribution of the estate. It reserved the issue of attorney fees and costs until further hearing.

On June 4, 2015, the trial court entered an order denying Nick's claim for attorney fees, entering final judgment on Nick's TEDRA petition and dismissing all

---

[5] CP at 309.
[6] CP at 429.

5

claims with prejudice, striking the trial date, authorizing payment of the attorney fee award from Nick's estate distribution, issuing instructions to deposit the remainder of Nick's distributive share into the court registry, unblocking the estate account, discharging the personal representatives, and closing the estate.

Nick appeals.

## ANALYSIS

Nick, representing himself, appeals from orders entered on February 9, 2015, May 11, 2015, and June 4, 2015. In his appellate briefing, he lists four assignments of error. These assignments of error do not reference any particular finding of fact or conclusion of law or any particular provision of any order designated in his notice of appeal. Nick includes very little argument to support these assignments of error, and he fails to cite any relevant authority.

We generally do not consider claims unsupported by citation to authority, references to the record, or meaningful analysis. RAP 10.3(5), (6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Self represented litigants are held to the same standard as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Nonetheless, to the extent that we can extract arguments from Nick's assignments of errors, we address them below.

Nick first claims that the trial court erred because "[Nick's] issues were ruled frivolous without merit in addition to dismissing the animus and malice by [the personal representatives]."[7] We disagree.

---

[7] Appellant's Opening Br. at 5.

Here, the trial court found that Nick engaged in litigation that was "designed for an improper purpose," that was "unsubstantiated in fact and/or unwarranted in law," and that he asserted claims that "were frivolous, not legally cognizable and not based on a plausible view of the law . . . ."[8] Nick does not challenge these findings of fact and thus, they are verities. Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002). These unchallenged findings of fact support the trial court's dismissal of four claims, including the claim based on "animus."[9]

Nick next claims that the trial court erred because "he was [d]enied due process and full discovery was not allowed for a trial as [the court commissioner] ordered."[10] He fails to support this assignment of error with any argument.

"Parties raising constitutional issues must present considered arguments to this court." State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). It is well established that "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" Johnson, 119 Wn.2d at 171 (internal quotation marks omitted) (quoting In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). Because Nick's due process argument is insufficient to allow review, we do not consider it.

Nick next claims that the trial court erred because "[t]he parties should be allowed to follow the logical progression through the TEDRA process."[11] He also fails to develop this assignment of error.

---

[8] CP at 461.
[9] CP at 462.
[10] Appellant's Opening Br. at 5.
[11] Appellant's Opening Br. at 5.

7

Treating this as a challenge to the trial court's dismissal of Nick's claims prior to trial, we note that TEDRA gives the trial court "full and ample power and authority" to administer and settle all estate and trust matters, "all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(1)(a), (b), (2).

We also note that our record is inadequate to fairly review the order entered on June 4, 2015, which dismissed all claims set forth in Nick's TEDRA petition. The June 4, 2015 order references several pleadings, but none of them appear in the appellate record. A party seeking appellate review has the burden of providing an adequate record for review, and the trial court's decision must stand if this burden is not met. Stevens County v. Loon Lake Prop. Owners Ass'n, 146 Wn. App. 124, 131, 187 P.3d 846 (2008).

Lastly, Nick claims that the trial court erred because the personal representatives "were awarded attorney fees for an issue the appellant brought before the court due to the fact the [personal representatives] were not following the will."[12] We disagree.

Appellate courts apply a two-part standard of review to a trial court's award or denial of attorney fees: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

---

[12] App. Op. Br. at 5.

8

Here, the trial court awarded attorney fees and costs under RCW 11.96A.150(1). Under that statute, "[e]ither the superior court or any court on appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . ." The court awarded fees "proportionate in [the] amount to the effort incurred by the improper conduct."[13] This amounted to $5,361.14.

RCW 11.96A.150 provided a proper legal basis for the trial court to award attorney fees. And the trial court did not abuse its discretion when it awarded attorney fees based on Nick's improper conduct or when it awarded fees in the amount of $5,361.14. In short, the court did not err.

As a final matter, the personal representatives request attorney fees on appeal. They rely on RCW 11.96A.150 and RAP 18.9(a), which allows this court to impose sanctions for a frivolous appeal or for the failure to comply with the rules of appellate procedure.

Both RCW 11.96A.150 and RAP 18.9(a) are discretionary. We decline to award attorney fees to the personal representatives in this appeal.

Affirmed.

Trickey, A.C.J

WE CONCUR:

---

[13] CP at 462.