[No. 50820–8. En Banc. January 11, 1985.]

THE BOEING COMPANY, *Respondent,* v. THE DEPARTMENT OF LICENSING, *Appellant.*

---

582

*Kenneth O. Eikenberry, Attorney General,* and *Barbara Phillips, Assistant,* for appellant.

*Perkins, Coie, Stone, Olsen & Williams,* by *John H. Binns, Jr.,* for respondent.

DORE, J.—We hold that The Boeing Company is exempt from aircraft fuel excise taxation when it (1) supplies fuel with the aircraft it sells to air carriers certified under federal law, and (2) uses fuel in its chase planes.

FACTS

Boeing manufactures and sells aircraft to commercial air carriers and other customers. As part of its business, Boeing purchases jet aircraft fuel and, in connection with the delivery of aircraft to customers, Boeing supplies jet aircraft fuel to air carriers holding certificates of public convenience and necessity issued under the provisions of the Federal Aviation Act of 1958, Public Law 85-726, as amended. In addition, Boeing uses aircraft fuel in chase planes. Chase planes are planes which accompany experimental aircraft for the purpose of observation and photography.

A statute imposing an excise tax on aircraft fuel was enacted in 1967 and amended in 1969. RCW 82.42.020 (Laws of 1969, 1st Ex. Sess., ch. 254, § 2).[1] The appellant, Department of Licensing, is the agency of the State of Washington which is responsible for administering the provisions of the statute.

Following enactment, Boeing, as a licensed dealer of aircraft fuel, began filing with the Department monthly reports of aircraft fuel consumption on forms supplied by the Department. These forms showed Boeing's use and delivery of aircraft fuel including jet aircraft fuel supplied by Boeing to air carriers certified under the Federal Aviation Act of 1958. As provided on the form, all deliveries of fuel by Boeing to its customers certified under the Federal Aviation Act of 1958 were deductible.

In 1969, the Department issued a notice directing the discontinuance of the old form. Instead, Boeing was instructed to use the new "Aviation Fuel Dealer and/or

---

[1]RCW 82.42.020 stated as follows:

"There is hereby levied, and there shall be collected by every distributor of aircraft fuel, an excise tax of two cents on each gallon of aircraft fuel sold, delivered or used in this state: *Provided*, That there shall be collected from every consumer or user of aircraft fuel either the use tax imposed by RCW 82.12.020, as amended, or the retail sales tax imposed by RCW 82.08.020, as amended, collection procedure to be as prescribed by law and/or rule or regulation of the department of revenue. The taxes imposed by this chapter shall be collected and paid to the state but once in respect to any aircraft fuel."

User" form which specifically excluded jet fuel from the reporting requirement. The reason behind the change in forms was that RCW 82.42 had been amended and placed liability for collection on distributors rather than dealers. As Boeing only had jet aircraft fuel to report, it stopped submitting any form to the Department after November 1969.

In 1979–80, the Department conducted an audit of Boeing's records for the purpose of determining aircraft fuel tax liability for the audit period of January 1, 1976 to December 31, 1978. During the audit period, Boeing did not hold an aircraft fuel distributor's license. The Department determined that Boeing had failed to pay tax on 8,387,073 gallons of fuel it used or supplied to others during the audit period. An assessment was issued against Boeing in the amount of $269,014.40 for taxes, penalties and interest. Boeing paid the tax bill and commenced suit against the Department for a refund.

The trial court held that Boeing was entitled to a refund of $211,130.74 because two of the various ways Boeing used or supplied fuel were exempt from taxation under RCW 82.42.030(1) and (2) (Laws of 1967, 1st Ex. Sess., ch. 10, § 3).

During the audit period, RCW 82.42.030 provided:

> The provision of RCW 82.42.020 imposing the payment of an excise tax of two cents on each gallon of aircraft fuel sold, delivered or used in this state shall not apply to aircraft fuel used for the following purposes: (1) The operation of aircraft when such use is *by* any air carrier or supplemental air carrier operating under a certificate of public convenience and necessity under the provisions of the Federal Aviation Act of 1958, Public Law 85–726, as amended; (2) the operation of aircraft *for* testing or experimental purposes; and (3) the operation of aircraft when such operation is *for* the training of crews for purchasers of aircraft: *Provided,* That the director's determination as to a particular activity for which aircraft fuel is used as being an exemption under this section, or otherwise, shall be final.

(Italics ours.)

Boeing supplied 5,618,715 gallons of fuel to certificated air carriers during the audit period. The fuel was on board the newly purchased aircraft at time of delivery. All the carriers were domestic carriers which possessed a certificate of public convenience and necessity, or were foreign flag carriers which were treated in the same manner by the Department. Former WAC 308–78–040. The trial court held that this fuel was exempt from taxation under RCW 82.42-.030(1). In addition, Boeing used 81,957 gallons of fuel during the audit period for chase planes. The trial court held this fuel to be exempt under RCW 82.42.030(2). The Department has appealed and contends these two activities were taxable.

## DECISION

■ As a preliminary matter, we find that Boeing was a distributor during the audit period.[2] Moreover, we agree with the decision of the trial court that distributors need not be licensed in order to be entitled to the exemptions of RCW 82.42.030.[3] The statute does not state that licensing is a prerequisite to exemption entitlement.

The first issue is the interpretation of RCW 82.42.030(1). Boeing contends that the air carriers to which it supplied

---

[2] A distributor is defined as "any person engaged in the sale of aircraft fuel to any dealer and shall include any dealer from whom the tax hereinafter imposed has not been collected." RCW 82.42.010(7) (Laws of 1969, 1st Ex. Sess., ch. 254, § 1). Boeing was licensed as a dealer during the audit period. It was established during the audit and lower court proceedings that a small portion of the fuel Boeing used during the audit period was taxable. Therefore, Boeing meets the statutory definition of distributor because it was a "dealer from whom the tax hereinafter imposed has not been collected." RCW 82.42.010(7).

[3] Because of our decision today, we do not need to reach one of the issues raised on appeal. The trial court held that the Department of Licensing's discontinuance of the old fuel reporting form, together with its failure to inform The Boeing Company that Boeing should become a licensed distributor of aircraft fuel, bars the Department from claiming that Boeing is not entitled to claim exemptions under RCW 82.42.030 because of its unlicensed status. We do not need to address this issue because we hold that licensing as a distributor is not a prerequisite to RCW 82.42.030 exemption entitlement.

fuel possessed certificates of public convenience; therefore, Boeing is exempt. The Department's position is that the mere possession of a certificate is not enough. In addition, the Department contends the particular flight must be of the type that requires a certificate, *i.e.*, one that involves the carriage of persons or property for hire or the carriage of mail.[4] The flights in question did not involve the transport of passengers or cargo for hire or mail.

The Department's denial of the exemption is new. Prior to 1980, the Department's position was that if Boeing could demonstrate that title and risk of loss of the aircraft had passed to the customer, then the fuel on board was not taxable. We quote from a letter dated December 10, 1979, written by Assistant Attorney General W. Howard Fischer to Merle Steffenson, Administrator, Prorate and Fuel Tax.

> RCW 82.42.030 provides an aircraft fuel tax exemption for fuel used in the operation of aircraft when such use is by an air carrier or supplemental air carrier operating under a certificate of public convenience and necessity under the provisions of the Federal Aviation Act of 1958, public law 85–726, as amended. Although I have not undertaken a comprehensive search of the law on the subject, I think there is a substantial likelihood that Boeing can meet its burden of proving its entitlement to the exemption if they demonstrate that title and risk of loss pass at a delivery point in Washington, and that the transfer of aircraft out of the state is by a certificated air carrier.

Plaintiff's exhibit 13. Mr. Steffenson then wrote to Boeing tax administrator James Tate, on April 21, 1980 and informed him that fuel on board at delivery was taxable "unless the title and risk of loss was transferred to the customer prior to the commencement of the delivery flight."

---

[4]A certificate of public convenience and necessity is essentially required before an interstate commercial carrier can begin operations. The Federal Aviation Act of 1958 provides "No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board [Civil Aeronautics Board] authorizing such air carrier to engage in such transportation." 49 U.S.C. § 1371(a). Air transportation is defined as the interstate carriage of persons or property for hire or the carriage of mail. 49 U.S.C. § 1301(21); 49 U.S.C. § 1301(10).

Plaintiff's exhibit 12. Boeing was able to demonstrate that this occurred. Clerk's Papers, at 16.

CERTIFICATED AIR CARRIER EXEMPTION

██ A comparison of the three exemptions of RCW 82.42.030 reveals that the Legislature intended that the fuel used by certificated air carriers was to be exempt. The last two exemptions depend on the *nature* of the particular flight in which the fuel is used. The first exemption, however, depends on the *identity* of the user. This is conveyed through the use of different prepositions. Exemption (1) exempts fuel used "when such use is *by* any air carrier . . . operating under a certificate of public convenience and necessity . . ." In contrast, the second and third exemptions exempt fuel used for a specified purpose. Exemption (2) exempts fuel used "*for* testing or experimental purposes", and exemption (3) exempts fuel used "*for* the training of crews for purchasers of aircraft". (Italics ours.) While the second and third exemptions focus on the nature of the particular flight, the first exemption clearly exempts fuel used by certificated air carriers as a class.

In addition, the last antecedent rule supports this interpretation. Such rule is one of statutory construction which says:

> Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent.

*Davis v. Gibbs*, 39 Wn.2d 481, 483, 236 P.2d 545 (1951). The rule as applied to RCW 82.42.030(1) means the qualifying phrase "operating under a certificate of public convenience and necessity" refers to the immediate antecedent phrase "any air carrier or supplemental air carrier". It does not refer to the prior phrase "the operation of aircraft".

CHASE PLANE EXEMPTION

During the audit period, Boeing consumed 81,957 gallons of jet aircraft fuel in chase planes. Boeing claims an exemption under RCW 82.42.030(2) which exempts aircraft fuel used for *testing or experimental purposes*.

At trial, the litigants stipulated to the following facts: (1) that chase planes accompany flights of Boeing–owned aircraft for testing and experimental purposes and (2) that chase planes observe and photograph the experimental aircraft. Clerk's Papers, at 16. Obviously, the stipulation and common sense mandate that chase planes are used for testing or experimental purposes, and are entitled to the exemption. We construe RCW 82.42.030(2) to include chase planes within the exemption.

### CONCLUSION

We hold that Boeing is entitled to the exemption of RCW 82.42.030(1) when it supplies fuel with the aircraft it sells to air carriers possessing a certificate of public convenience and necessity issued under the provisions of the Federal Aviation Act of 1958. We further hold that chase planes are included within the exemption of RCW 82.42-.030(2). We affirm.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, PEARSON, and ANDERSEN, JJ., concur.